O'BRIEN, Circuit Judge.
*1204 Adrian M. Requena is an inmate housed by the Kansas Department of Corrections (KDOC). His initial 42 U.S.C. § 1983 complaint named 11 prison employees as defendants and alleged various violations of his First, Eighth, and Fourteenth Amendment rights. Two months later, he amended that complaint, without leave to do so, again asserting various violations of his constitutional rights and adding nine defendants. The district judge screened that complaint as required by 28 U.S.C. § 1915A(a). After setting forth the claims, he decided they were "not linked by a common question of law or fact, involve different defendants, and arose from different transactions." (R. Vol. 1 at 379.) He concluded Requena "may not present all of the claims in a single action" and directed him to decide which claims he wished to pursue and file a second amended complaint accordingly. (Id. )
The second amended complaint (hereinafter complaint) named 38 defendants and alleged myriad violations of his First, Eighth, and Fourteenth Amendment rights. Attached to the complaint was over 450 pages of exhibits. The complaint fell far short of containing "a short and plain statement" of the claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2). Nor did it provide any citations to the exhibits to aid the judge (or us) in navigating the swamp.[1]
The judge did another § 1915A(a) screening of the complaint. He concluded "many of [the] claims lack support or substance, and much of the material submitted as exhibits appears to be irrelevant and disorganized." (R. Vol. 1 at 1150.) At the end of the day, the judge identified two claims meriting discussion-(1) denial of hygiene supplies and (2) denial of access to the courts. Both failed to state a claim for relief. He dismissed the entire complaint with prejudice,[2] but did not first explicitly address whether amendment of the complaint would be futile, even though Requena's complaint requested leave to amend if necessary to cure any deficiencies.[3] Judgment was entered the same day. Requena filed a motion to alter or amend judgment, which the judge denied.
Our review is de novo. McBride v. Deer , 240 F.3d 1287, 1289 (10th Cir. 2001). In conducting our review, we "accept all ... well-pleaded allegations ... as *1205 true and ... construe them in the light most favorable to the plaintiff." Young v. Davis , 554 F.3d 1254, 1256 (10th Cir. 2009) (quotation marks omitted). To survive dismissal, "[a] plaintiff must nudge his claims across the line from conceivable to plausible...." Khalik v. United Air Lines , 671 F.3d 1188, 1190 (10th Cir. 2012) (brackets and quotation marks omitted). "[T]he complaint [must] include[ ] enough facts to state a claim to relief that is plausible on its face." Young , 554 F.3d at 1256 (quotations omitted); see also Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). We also consider the exhibits to Requena's complaint in determining whether he stated plausible claims. Gee v. Pacheco , 627 F.3d 1178, 1186 (10th Cir. 2010). Ordinarily, "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." Perkins v. Kan. Dep't of Corr. , 165 F.3d 803, 806 (10th Cir. 1999).
Because Requena appeared pro se, we liberally construe his pleadings. Yang v. Archuleta , 525 F.3d 925, 927 n.1 (10th Cir. 2008). Nevertheless, he bears "the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon , 935 F.2d 1106, 1110 (10th Cir. 1991). In doing so, he must comply with the same rules of procedure as other litigants. Ogden v. San Juan Cty. , 32 F.3d 452, 455 (10th Cir. 1994).
Requena (still pro se) has failed to follow the federal rules of appellate procedure. Rule 28(a)(6) requires briefs to contain "a concise statement of the case setting out the facts relevant to the issues submitted for review ... with appropriate references to the record ." (Emphasis added). In his brief, he provides us with a nine-page statement of the facts with no record citations. His cavalier approach has made our review overly and unnecessarily burdensome. We will not act as his counsel, searching the record for arguments he could have, but did not, make, particularly when he has not made the slightest effort to tie his arguments to the record.
In his brief, he raises eight arguments addressing nine different claims. However, because he failed to raise one of those claims in the complaint, we will not consider it.[4] Similarly, although the complaint raised numerous claims, we will address only those challenged on appeal. See Coleman v. B-G Maint. Mgmt. of Colo., Inc. , 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived."). To reiterate, we will not consider arguments on appeal not tied to the allegations in the complaint and we will not consider claims in the complaint not raised on appeal.
Although the judge did not explicitly address futility of amendment, it is implicit in his treatment of the case (a series of patiently delivered orders) that he considered further amendment futile. We nevertheless consider futility, as it is a question of law. Cohen v. Longshore , 621 F.3d 1311, 1314-15 (10th Cir. 2010). In doing so, however, we will not conjure facts Requena might conceivably raise in support of his claims; that would make us his advocate. Our restraint is particularly critical when he made no appropriate effort *1206 in the district court to seek amendment or to indicate, there or here, how amending his complaint would cure its deficiencies (he contends, implicitly at least, that his pleadings are adequate). A proper motion to amend, accompanied by a proposed amended complaint or a detailed description of proposed amendments, provides notice to the screening judge (and the opposing parties when appropriate) of the purpose to be served by the amendment. Calderon v. Kan. Dep't of Soc. & Rehab. Servs. , 181 F.3d 1180, 1186-87 (10th Cir. 1999). It should include reality-based facts in sufficient detail to satisfy Iqbal and Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). If properly done the judge can fairly decide whether amendment would be fruitful. Anything less simply invites a "merry-go-round" ride. But here, the failure of a disciplined approach is ameliorated. Requena has provided us with "everything but the kitchen sink," attaching what appears to be every grievance and claim he filed in the prison for over two years (October 2011 to February 2014). We have reviewed his complaint AND the materials pertinent to each claim in deciding whether amendment would be futile. Most likely, we have here merely repeated the district judge's thought processes (which he often did not explain) in evaluating Requena's claims. We do so as a matter of judicial economy, all the while recognizing that thorough explanation by the district court would obviate our need to do so. That said, avoiding a remand to the district court for a detailed explanation of what is by now patently obvious is the most efficient approach.
A. Eighth Amendment-Denial of Hygiene
On October 3, 2011, Requena ordered supplies, including hygiene items, from canteen. The next day, he was placed in administrative segregation. He again ordered canteen (presumably also including hygiene items) on October 10. The next day, he was transferred from administrative segregation to disciplinary segregation. That same day, he filed a Request to Staff asking that the supplies he ordered on October 3 be sent to him in disciplinary segregation. The next day, his unit team manager Schneider informed him there are limits on the items inmates can purchase and possess when in disciplinary segregation. As a result, it was likely his canteen items included proscribed items and were therefore returned and the purchase price refunded. He suggested Requena seek confirmation from canteen.
On October 19, 2011, Requena filed a grievance claiming Warden Sam Cline and his unit team managers, Schneider, Williams, and Riemann, had denied him hygiene supplies since entering disciplinary segregation and he could not reorder the supplies until the previous amounts were refunded to his account. On October 21, 2011, Riemann formally responded to the grievance stating prison policy prohibits inmates from possessing certain items while in disciplinary segregation. Although acknowledging that such inmates are entitled to hygiene items, he informed Requena that because he had ordered both prohibited and permissible items, the entire order was returned. He said the amount of the October 3 order had been refunded to his account and the purchase price of the second order should soon be refunded.[5]
*1207 Warden Sam Cline rejected Requena's subsequent appeal on November 10, 2011, finding his account had since been refunded for both canteen orders. He also concluded that based on Requena's previous stints in segregation, he should have known how personal property is handled in administrative and disciplinary segregation. Requena appealed to the Secretary of Corrections, Ray Roberts. Douglas Burris, the Secretary's designee, denied relief. Requena received hygiene supplies on November 2, 2011.
In his complaint, Requena alleged Schneider, Riemann, Williams, Cline, Burris, and Roberts violated his Eighth Amendment rights by denying him hygiene supplies (soap, toothpaste, and toothbrush) for 30 days. The judge decided "[t]he deprivations alleged, while unpleasant, do not suggest that [Requena] suffered any injury or that he was denied all access to hygiene. His access to hygiene supplies was limited due to his segregated status, but inmates in that status are issued at least small amounts of hygiene supplies." (R. Vol. 1 at 1152.) He concluded the allegations were "not sufficient to state an objectively serious threat to [his] wellbeing or demonstrate deliberate indifference by prison officials, as required to state a claim under the Eighth Amendment." (Id. )
The judge was mistaken in part-Requena was without any hygiene items in October 2011. But the mistake is understandable considering Requena's undisciplined approach to litigation. The complaint and the materials attached thereto reveal there were two relevant periods of time in which Requena was in segregation-first in October 2011 and then again in February 2012. During both stints, he complained of a lack of hygiene supplies. However, during the February 2012 period, the materials attached to the complaint show he was provided some hygiene items upon entering segregation.[6] During the October 2011 stint, on the other hand, he alleges he was without hygiene supplies for 30 days and the materials attached to the complaint do not show otherwise. It is this 30-day period in October 2011 of which he complains.
The judge is correct, however, that the complaint did not allege any injury resulting from the lack of hygiene supplies in October 2011. "A deprivation of hygiene items without any corresponding injury would not state an Eighth Amendment violation." Whitington v. Ortiz , 472 F.3d 804, 808 (10th Cir. 2007) ; see also Penrod v. Zavaras , 94 F.3d 1399, 1406 (10th Cir. 1996) (per curiam) (denial of toothpaste and razors for over 2 months which caused gums to bleed and recede and tooth decay "raised a genuine issue of material fact in regard to whether prison officials[ ] ... caused plaintiff serious harm"); Scott v. Case Manager Owens (SCF) , 80 F. App'x 640, 643 (10th Cir. 2003) ("Scott has alleged nothing that suggests he has been subjected to inhumane conditions of confinement.... Although a denial of basic hygiene items might meet this standard under extreme conditions, Scott has not come close to alleging a substantial risk of serious harm in this case. In fact, Scott has not alleged any injury whatsoever...." (citations omitted) ). Dismissal for failure to state a claim was proper.
However, as previously stated, the judge did not explicitly say an amendment of the complaint would be futile. On appeal, in the caption of the argument concerning *1208 this issue, Requena contends that as the result of the denial of hygiene supplies, he "acquired rashes on his body from not being able to wash off dirt and ... sustained scars from the rashes." (Appellant Br. at 13.) Such injury might suffice.
But Requena "failed to take advantage of available opportunities to amend." Weldon v. Ramstad-Hvass , 512 F. App'x 783, 797 (10th Cir. 2013) (unpublished). "If a party seeks to amend a pleading following the court's grant of a motion to dismiss, the party must first move to reopen the case under Fed. R. Civ. P. 59(e) or 60(b) and then file a motion under Fed. R. Civ. P. 15 for leave to amend" which gives "adequate notice ... of the basis for the proposed amendment." Calderon , 181 F.3d at 1185-87 ; see also Switzer v. Coan , 261 F.3d 985, 989-90 (10th Cir. 2001) ("[I]t was incumbent upon [the pro se plaintiff] to seek leave from the district court to make the attempt [to amend] after dismissal of his action below." (quotation marks omitted) ). Requena filed a post-judgment motion to alter or amend judgment but did not seek leave to amend the complaint in that motion or allege an actual injury resulting from the denial of hygiene items, even though the judge's dismissal order alerted him to this deficiency. Even on appeal, he has not argued he should have been allowed to amend the complaint to cure its deficiencies. Whatever prompted him to forgo a motion to amend, it was not a lack of notice. We decline to allow him the opportunity to amend now.
B. First Amendment-Denial of Access to the Courts
In October 2011, Requena submitted several poems to the prison librarian for proofreading. Believing some of the poems were inappropriately directed at her, the librarian reported Requena to prison staff. He was charged with "undue familiarity with a correctional staff member" and, after a disciplinary hearing at which Requena alleges he was unable to present documentary evidence in his favor, he was found guilty. He filed a state petition for post-conviction relief pursuant to Kan. Stat. Ann. § 60-1501 challenging the disciplinary finding. The state court judge rejected his petition concluding "some evidence" existed to support the disciplinary decision. See Superintendent, Mass. Corr. Inst. v. Hill , 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (to satisfy due process, there must be "some evidence in the record" supporting a prison disciplinary decision). Requena appealed to the Kansas Court of Appeals. His appellate docketing statement indicated he wanted to challenge the "some evidence" standard as ambiguous and unconstitutional. His appeal was ultimately dismissed for failing to provide the requisite number of copies of his appellate brief.
In the complaint, Requena alleged certain defendants denied him access to the courts by not allowing him to use his forced savings account to pay to photocopy his appellate brief. The judge dismissed this claim because, inter alia , Requena had not shown "actual injury" as the claim he sought to raise to the Kansas Court of Appeals was frivolous. See Gee , 627 F.3d at 1191 (to state a constitutional claim for denial of access to the courts, "a prisoner must demonstrate actual injury from interference with his access to the courts-that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement" (emphasis added) ).
Here, Requena claims he did plead actual injury-the denial of photocopies prevented him from pursuing a legitimate claim that he was not guilty of the disciplinary action and he was denied due process in the disciplinary hearing because *1209 he was not allowed to present documentary evidence showing the poems to have been written ten years earlier. But that was not the claim he presented in the appellate docketing statement. The claim he presented (attacking the "some evidence" rule) had no chance of success and was frivolous. See Neitzke v. Williams , 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (an argument, like a complaint, "is frivolous where it lacks an arguable basis either in law or in fact"). Simply claiming a long-standing legal doctrine is unconstitutional fails to make the cut. Nevertheless, even if he could allege an actual injury, dismissal was appropriate and amendment of the complaint would be futile because we have already rejected his denial of access claim. See Requena v. Sheridan , 691 F. App'x 523, 525 (10th Cir. 2017) (unpublished). Collateral estoppel (issue preclusion) bars this claim. See Moss v. Kopp , 559 F.3d 1155, 1161 (10th Cir. 2009) ("Collateral estoppel bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim."); see also Arizona v. California , 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte , even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." (quotation marks omitted) ).[7]
C. Fourteenth Amendment-Equal Protection
In the complaint, Requena alleged that between November 22, 2011, and January 28, 2012, Lamb, his unit team manager, denied his requests for (unnamed) assistance yet had "no problem" providing his "black and white friends" the same assistance.[8] (R. Vol. 1 at 394.) He claimed he went around the prison and asked other inmates about Lamb. All the unnamed "Mexican and Indian inmates" on Lamb's caseload said he "would not do anything for them," while "all the black and white inmates" on his caseload said "they did not have any problems with [Lamb]." (Id. at 866.) More specifically, he alleged that on December 20, 2011, he "asked M. Lamb if he could call his father because his father was ill and could possibly die"; Lamb refused because "he did not allow inmates to use his phone for no reason." (R. at 865 (emphasis added).) Later that day, he heard a "white inmate ... who said that his wife was getting ready to have a baby" ask Lamb "if he could use the phone." ( *1210 Id. at 866 (emphasis added).) Lamb told the inmate "to have the officers let him out during [the inmate] count and have the [telephone] number ready." (Id. ) Requena claimed Lamb discriminated against him based on his race (allegedly Hispanic and Native American) in violation of the Fourteenth Amendment's Equal Protection Clause. The judge dismissed this claim without discussion. Dismissal was appropriate and leave to amend would be futile.
"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr. , 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ; see also Barney v. Pulsipher , 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them."). Thus, to establish an equal protection violation, Requena must allege facts that Lamb treated him differently than other similarly situated prisoners. Individuals are "similarly situated" only if they are alike "in all relevant respects." Coal. for Equal Rights, Inc. v. Ritter , 517 F.3d 1195, 1199 (10th Cir. 2008) (quotation marks omitted). Moreover, to state a race-based equal protection claim, "[a] plaintiff must sufficiently allege that defendants were motivated by racial animus." Phelps v. Wichita Eagle-Beacon , 886 F.2d 1262, 1269 (10th Cir. 1989).
Requena's general allegations of racial animus and discriminatory treatment are too vague and conclusory to state a claim. His specific allegation fares no better. Even assuming this one example would be sufficient to demonstrate Lamb treated him differently than his "black and white friends" because he is "Mexican and Indian," he and the other inmate were not similarly situated-Requena wanted to use Lamb's phone to call his ill father; the other inmate wanted to use the phone (presumably the prison telephone) to call his wife who was getting ready to have a baby. The facts are not sufficiently malleable to somehow consider Requena similarly situated to the other inmate; amendment of the complaint would be futile. And as stated, we will not hypothesize sufficient facts to state a claim, especially when the materials attached to the complaint do not reasonably support doing so and he does not provide any other showing of disparate treatment or racial animus in his appellate brief.
D. First Amendment-Retaliation
On February 1, 2012, two days after Requena filed a grievance against Lamb alleging bias against Hispanics and Native Americans, correctional officer McGehee filed a disciplinary report against Requena alleging he "brushed up against" her and later "walked abnormal[l]y close" to her. (R. Vol. 1 at 892.) Requena was subsequently charged with and found guilty by a prison hearing officer of battery and attempted assault.
In the complaint, Requena alleged McGehee filed the false disciplinary report in retaliation for his filing a grievance against Lamb in violation of the First Amendment. He also alleged she retaliated against him by calling him a "dumb Indian" on several occasions, harassing him "all night" while he was in segregation due to the disciplinary conviction, and placing him on "nutraloaf" without following proper procedure.[9] (R. Vol. 1 at 866-67.)
*1211 The district judge dismissed these claims without discussion. Dismissal was appropriate and amendment of the complaint would be futile.
"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." Gee , 627 F.3d at 1189 (brackets and quotation marks omitted). "Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Shero v. City of Grove , 510 F.3d 1196, 1203 (10th Cir. 2007). The filing of prison grievances is constitutionally protected activity. Gee , 627 F.3d at 1189.
Requena cannot state a retaliation claim against McGehee based on the disciplinary report because the prison hearing officer found he committed the acts alleged in the report. Not only that, we rejected his due process challenge to that disciplinary decision, concluding "there is more than enough evidence to sustain [it]." See Requena v. Roberts , 650 F. App'x 939, 940 (10th Cir. 2016) (unpublished). "[A] prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction." O'Bryant v. Finch , 637 F.3d 1207, 1215 (11th Cir. 2011) (per curiam); see also Hartsfield v. Nichols , 511 F.3d 826, 829 (8th Cir. 2008) ("An inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights. However, claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." (citations omitted) ); Lopez v. Roark , 637 F. App'x 520, 521 (10th Cir. 2016) (unpublished) (relying on O'Bryant to reject inmate's retaliation claim); Pinson v. Berkebile , 576 F. App'x 710, 713 (10th Cir. 2014) (unpublished) (same).
To the extent his retaliation claim is based on McGehee calling him a "dumb Indian," harassing him "all night" while in segregation,[10] and placing him on "nutraloaf" without following proper procedure, such actions alone, although unprofessional and unpleasant, do not constitute adverse action sufficient to support a retaliation claim. See Davis v. Goord , 320 F.3d 346, 353 (2d Cir. 2003) (insulting, disrespectful, or sarcastic comments directed at an inmate "do not, without more, constitute an adverse action" for purposes of stating a retaliation claim); see also McDowell v. Jones , 990 F.2d 433, 434 (8th Cir. 1993) ("[V]erbal threats and name calling usually are not actionable under § 1983."); cf. Lewis v. McKinley Cty. Bd. of Cty. Comm'rs , 425 F. App'x 723, 727 (10th Cir. 2011) (unpublished) (unappetizing prison *1212 food does not rise to a constitutional violation).
The Kansas Court of Appeals has already rejected this same retaliation claim. See Requena v. Cline , No. 108,395, 2013 WL 1876471, at *4 (Kan. Ct. App. May 3, 2013) ("Requena has failed to demonstrate that McGehee's act of filing a disciplinary action against Requena was 'substantially based' upon Requena's decision to file a grievance against Lamb in an entirely separate matter.... Moreover, any link between McGehee's act of filing of a disciplinary report and later act of calling Requena a 'dumb Indian' is tenuous as far as demonstrating a retaliation claim. Notably, Requena claims McGehee called him a 'dumb Indian' after he was convicted of battery and assault." (citation omitted) ). The Kansas Supreme Court denied review. Collateral estoppel bars this claim.
E. Fourteenth Amendment-Due Process (Property Interest)
On July 1, 2012, correctional officer Wagner charged Requena with having dangerous contraband. As a result, his incentive level was reduced and he could no longer possess a television in his cell. Requena alleges correctional officer Joshua Pettay donated his television to the Salvation Army without first providing him notice and used a form pre-approved by Warden Cline to do so.
On June 30, 2012, Requena was assaulted by another inmate and sent to the infirmary. While there, officers packed up his property for storage. Requena claims the property included a book containing a legal brief. While he eventually received the book, the brief was not found. As a result, he had to rewrite the brief.
In the complaint, Requena alleged the deprivation of his television and the loss of his legal brief violate due process. The judge dismissed this claim without discussion. Dismissal was appropriate and leave to amend would be futile.
The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[W]here a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur," thus rendering a predeprivation hearing "not only impracticable, but impossible." Hudson v. Palmer , 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (quotation marks omitted). In such circumstances, due process is satisfied so long as "a meaningful postdeprivation remedy for the loss is available." Id. at 533, 104 S.Ct. 3194. Inmate grievance procedures can be an adequate postdeprivation remedy. Id. at 536 n.15, 104 S.Ct. 3194.
Requena's complaint did not allege that his legal brief was lost or destroyed pursuant to an established state procedure and the materials attached to the complaint do not so demonstrate. Similarly, while Requena made a blanket allegation in his complaint that his television was donated pursuant to established state procedure (a charge he repeats in his appellate brief), his specific allegations and the materials attached to the complaint reveal a complaint that Pettay donated the television "without notifying him" or giving him the requisite 45-days in which to decide on the disposition of the property. (R. Vol. 1 at 395, 415.) He also claimed Pettay used a form pre-approved by Cline to donate his television. In other words, he has alleged the donation of his television was "in violation of, rather than according to, established procedure." See Johnson v. Whitney , 723 Fed.Appx. 587, 593 (10th Cir. 2018). "Therefore, he must plead facts showing that his state [post-deprivation]
*1213 remedy was inadequate." Id. He did not do so, nor can he.
The materials attached to the complaint show he filed a Request to Staff asking staff to retrieve a book containing his brief from his stored property. The book was eventually found but not the brief. Those same materials reveal he filed a grievance concerning the donation of his television. The grievance was denied, as were his subsequent appeals. Requena also filed a property claim concerning both the brief and the television. His property claim requested $227 for the television (for which he paid $102.93 in 2007) and $500 for the time having to re-write the brief. The Joint Committee on Special Claims Against the State reviewed the claims and denied relief.
As to his television, the Committee found Requena was given a property removal form but he refused to sign it and he failed to provide Pettay an address to which to send his television. Under those circumstances, prison policy required the warden to designate where the property should go and Cline decided the television should be donated to a charitable organization. Before donating it, however, Pettay gave Requena another opportunity to say how he wished to dispose of the television; he again refused to do so. The Committee concluded "Requena lost his incentive level as a consequence of his own behavior, and he twice waived the right to make a decision about the disposition of his television." (R. Vol. 1 at 673.) With regard to the legal brief, it concluded the "claimed loss cannot be substantiated, there is no showing that any such loss was the direct result of negligence on the part of correctional staff, and his sole claim is for time spent on his legal work, for which he is not entitled to recover." (Id. at 674.)
His claims were submitted, investigated, and reviewed at multiple levels. There is no allegation that the process was "unresponsive and inadequate."[11] Freeman v. Dep't of Corr. , 949 F.2d 360, 362 (10th Cir. 1991). The mere fact his claims were denied does not amount to the denial of due process. See Coburn v. Wilkinson , 700 F. App'x 834, 837 (10th Cir. 2017) (unpublished).
F. Eighth Amendment-Failure to Protect and Denial of Medical Care
1. Failure to Protect
In the complaint, Requena alleged that on March 24, 2012, he was charged with removing drumsticks from the Native American callout[12] without permission. He was subsequently found guilty of impermissibly having those items in his cell. As a result of his actions, prison officials removed the drumsticks which had been in the Native American callout for decades. Believing other Native American inmates would retaliate against him for causing the drumsticks to be removed, Requena twice spoke with unit team manager Newkirk, "express[ing] his concern that something might happen to him" and requested to be transferred. (R. Vol. 1 at 741.) Newkirk told him a transfer "might take a couple [of] weeks." (Id. ) On May 31, 2012, Requena talked to Cranston (apparently a mental *1214 health provider) about his fears. The next day, June 30, he was brutally beaten with a blunt object by two members of the Native American callout during the evening mealtime. He also claimed Correctional Officer Crotts knew a fight was about to occur because inmates were "table hopping," yet he prevented another officer from doing anything because he "wanted to see a fight." (Id. at 742.)
As a result of the June 30 incident, Requena was placed in administrative segregation.[13] In July, he sent Jon Graves, an administrative attorney, a Request to Staff seeking not to be returned to the general population and two letters "expressing his concerns." (Id. at 742.) He also sent a Request to Staff and grievance to correctional officer Dusseau seeking to be transferred to another facility. Dusseau denied the grievance, stating Requena was not the only inmate involved in altercations. On July 30, 2013, Requena was told by an unknown correctional officer that, per the order of Dusseau, if he refused to be released to the general population, he would be issued a disciplinary report for disobeying orders. He was released to the general population and placed in a cell "right next door" to one of the inmates who had beaten him. (Id. at 743.) He spoke to Newkirk, who told him he would be moved the next day. The next day, July 31, 2012, he was again beaten by "another" inmate. (Id. )
In the complaint, Requena alleged Newkirk, Cranston, Crotts, Graves, and Dusseau violated his Eighth Amendment rights by failing to protect him. The judge did not address this claim before dismissing it. Dismissal was appropriate, but only in part.
Under the Eighth Amendment, prison officials have a duty to "provide humane conditions of confinement," including "tak[ing] reasonable measures to guarantee the safety of ... inmates." Farmer v. Brennan , 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks omitted). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." Id. at 833, 114 S.Ct. 1970 (ellipsis and quotation marks omitted). To prevail on a failure to protect claim, an inmate must show (1) "that the conditions of his incarceration present an objective substantial risk of serious harm" and (2) "prison officials had subjective knowledge of the risk of harm," "[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Howard v. Waide , 534 F.3d 1227, 1236 (10th Cir. 2008) (quotation marks omitted).
It appears Requena has adequately pled an Eighth Amendment claim against Newkirk, Cranston, and Crotts with regard to the June 30 beating. Newkirk and Cranston were allegedly aware of his fear of retaliation by members of the Native American callout but did nothing and he was subsequently beaten by two members of the callout. Crotts allegedly knew a fight was about to occur and prevented another officer from averting it.[14] On the other hand, he fails to state a claim against Graves or Dusseau for failure to protect as to the July 31 beating. Although he does not indicate in the complaint the nature of his fear of returning to general population, we assume it pertained to further *1215 retaliation from callout members. But he does not allege that the inmate who beat him on July 31 was a member of the Native American callout or acting on behalf of such member. Thus he has not alleged and cannot allege Graves or Dusseau were aware of the risk of harm that ultimately came about. Moreover, in his brief, he only criticizes Dusseau and Graves for placing him in a cell next to one of the inmates who assaulted him. But there is no allegation that he suffered any harm from that placement-both beatings occurred in the dining hall, not his cell or its environs, and the July 31 beating occurred at the hands of a different inmate.
Dismissal of Requena's Eighth Amendment claim for failure to protect against Newkirk, Cranston, and Crotts was improper.
2. Denial of Medical Care
In the complaint, Requena alleged he suffered a head injury as a result of the June 30 attack and has suffered vision and hearing loss as a result. He claimed Nurse Debra Lundry denied him medical assistance on September 27, 2012, because his medical problems were due to allergies, not a head injury. Yet, she let his allergy medication run out without any follow up or concerns. He also claimed he had to wait seven months for an eye exam and glasses and fifteen months for a hearing exam. Although he was fitted for a hearing aid by an audiologist in January 2014, and Burris, the Secretary of Corrections' designee, acknowledged this, he alleged he has not yet received it (as of April 2014, the date of the complaint). Requena also claimed that Dr. Shaver (apparently an audiologist) told Requena he had significant hearing loss but he could not determine if it was caused by the head injury, whereas the Director of Nursing, David Rogge, suggested he had only mild hearing loss. He further alleged he requested mental health treatment for the psychological problems he sustained from the brutal beatings but Wilson and Barnt have denied his requests. According to Requena, Wilson and Barnt know he wants to work on anxiety and anger stemming from the attack.
The judge dismissed this claim without discussion. Dismissal was appropriate and the materials attached to the complaint show amendment would be futile.
"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble , 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citation and quotation marks omitted). To state a denial of medical care claim, a plaintiff must satisfy "both an objective and a subjective component." Mata v. Saiz , 427 F.3d 745, 751 (10th Cir. 2005) (quotation marks omitted). First, he must "produce objective evidence that the deprivation at issue was in fact sufficiently serious." Id. (quotation marks omitted). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quotation marks omitted). Second, under the subjective component, he must allege the prison official acted with a sufficiently "culpable state of mind," i.e. that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must [have been] both ... aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." Id. (alteration and quotation marks omitted).
In his appellate brief, Requena complains only about the delay in receiving treatment for the vision and hearing loss he sustained as a result of the June 30 *1216 beating and the denial of a hearing aid.[15] But "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." Garrett v. Stratman , 254 F.3d 946, 950 (10th Cir. 2001) (quotation marks omitted). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Id. Although he alleged in the complaint that his vision and hearing loss was permanent, he did not allege the permanency resulted from the delay in medical care but rather from the June 30 beating. Nor has he alleged the delay caused him considerable pain and the materials attached to the complaint do not suggest otherwise.
As for the denial of the initially recommended hearing aid, he has not alleged who was responsible for the denial or why. The materials attached to the complaint fill in the blanks; they indicate that in denying two of Requena's grievances, Burris, the Secretary's designee, found Requena had been seen by an audiologist on January 31, 2014, and fitted for a hearing aid. Those same materials show Requena was informed on March 12, 2014, that a nurse had called Dr. Shaver's office about the hearing aid and was waiting for a callback. A week later, Rogge informed Requena that the audiologist's finding suggested only mild hearing loss at low frequencies which does not indicate the need for hearing aids. To the extent Requena alleges Rogge denied him a hearing aid, the allegations show a mere disagreement with Rogge's diagnosis and prescribed course of treatment, which does not state an Eighth Amendment claim. Perkins , 165 F.3d at 811. To the extent he blames Burris, his mere response and denial of Requena's grievance are insufficient to establish the requisite personal participation under § 1983. Gallagher v. Shelton , 587 F.3d 1063, 1069 (10th Cir. 2009).
G. Fourteenth Amendment-Due Process (Liberty Interest)
In the complaint, Requena alleged that on July 1, 2012, Wagner issued a disciplinary infraction against him for possessing dangerous contraband. On April 22, 2013, this infraction was reversed at the administrative level after he filed a state petition for post-conviction relief pursuant to Kan. Stat. Ann. § 60-1501. Since that time, he has been "trying to get compensated" for the 30 days he served in disciplinary segregation and the 60 days of restrictions he endured as a result of the infraction but correctional officers Langford and Reimann incorrectly believe he only wants his *1217 lost wages. (R. Vol. 1 at 870.) He claims he "made it perfectly clear" he wants $35,000. (Id. ) The district judge did not address this claim prior to dismissing it, most likely because it was unartfully plead.
On appeal, citing Heck v. Humphrey , 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), Requena argues he is entitled to compensation for the time he served in disciplinary segregation and for the restrictions (loss of privileges) he endured as a result of the overturned disciplinary infraction.[16] While Heck may not bar his § 1983 claim,[17] he still must show he is entitled to relief as a result of the alleged loss of liberty.
In the prison context, "[a] protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an atypical and significant hardship in relation to the ordinary incidents of prison life." Rezaq v. Nalley , 677 F.3d 1001, 1011 (10th Cir. 2012) (ellipsis and quotation marks omitted). We typically consider four nondispositive factors in deciding whether segregation imposes such a hardship: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement ...; and (4) the placement is indeterminate." Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons , 473 F.3d 1334, 1342 (10th Cir. 2007).
In this case, Requena did not allege any facts that would plausibly indicate his segregation was atypical or a significant hardship in relation to the ordinary incidents of prison life. Requena's disciplinary segregation was limited to 30 days and did not increase the duration of his imprisonment. Nor has he alleged the conditions of his confinement in segregation were extreme. In Sandin v. Conner , the Supreme Court concluded 30 days of disciplinary segregation for a misconduct charge that was eventually found to be unsupported and expunged was not an "atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. 472, 476, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).
*1218 Similarly, Requena has not alleged his restrictive status imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. The only restriction he alleges is that it was Wagner's disciplinary report which led to him being prohibited from possessing a television in his cell. But "restrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause." Marshall v. Morton , 421 F. App'x 832, 838 (10th Cir. 2011) (unpublished).
Because Requena has not alleged a protected liberty interest, nor can he, dismissal was appropriate and leave to amend would be futile.
We REVERSE the dismissal with prejudice of Requena's Eighth Amendment claim against Newkirk, Cranston, and Crotts regarding their alleged failure to protect him from the June 30, 2012 beating. We AFFIRM the dismissal of the second amended complaint in all other respects.
The district judge granted Requena's request to proceed on appeal without prepayment of fees (in forma pauperis or ifp ), see 28 U.S.C. § 1915(a), and assessed fees. Requena is obligated to continue to make partial payments until the filing and docketing fees ($505.00) have been paid in full.

The organization of the complaint further complicates the matter. The list of Defendants, the "Nature of the Case," Count I, and part of Count II appear at pages 402-421. He then provides over 300 pages of exhibits. Count II then continues on pages 741-744, following by over 100 pages of exhibits. Count III appears at pages 865-872, followed by over 40 pages of exhibits.

Because the judge's order and the judgment do not indicate whether dismissal was with or without prejudice, we treat the dismissal as with prejudice. See Cohen v. Longshore , 621 F.3d 1311, 1314 (10th Cir. 2010).

Merely suggesting he should be allowed to amend if the judge concludes his pleadings are deficient "is insufficient." See Garman v. Campbell Cty. Sch. Dist. No. 1 , 630 F.3d 977, 986 (10th Cir. 2010). He should have filed a written motion for leave to amend, giving adequate notice of the basis of the proposed amendment. Id. ; see also Calderon v. Kan. Dep't of Soc. & Rehab. Servs. , 181 F.3d 1180, 1186-87 (10th Cir. 1999). Although Garman and Calderon were counseled cases, we have applied them to pro se plaintiffs. See Muathe v. Fifth Third Bank , 627 F. App'x 732, 734 (10th Cir. 2015) (unpublished); Koyle v. Wells Fargo Bank Minn. , 470 F. App'x 712, 713 (10th Cir. 2012) (unpublished). Simply stated, his request in the complaint to amend, if necessary, was inadequate. A formal motion was required. Pro se litigants are required to follow the rules. Ogden v. San Juan Cty. , 32 F.3d 452, 455 (10th Cir. 1994).

The claim concerns the alleged denial of interest on his Mandatory Savings Account. Over a year after filing the complaint, he filed a declaration in the district court (one of seven declarations) raising this claim and asking for it to be incorporated into his second amended complaint. The judge never granted him the necessary permission to do so. See Fed. R. Civ. P. 15 (a)(1), (2) (allowing amendment "once as a matter of course"; "[i]n all other cases, a party may amend ... only with ... the court's leave").

It is unclear why Requena did not re-order hygiene supplies once the amount of his October 3 order had been refunded to his account (at the latest October 21). In his grievance concerning the matter, he alleged inmates may only spend $10 while in disciplinary segregation and he could not reorder supplies until both of his orders had been refunded. He did not, however, supply details about his account or the prison regulations supporting these allegations.

The difference in treatment between October 2011 and February 2012 appears to have resulted from a change in prison policy.

While Requena did not sue Larson and Burris in the previous action, all that matters for purposes of collateral estoppel, as opposed to res judicata (claim preclusion), is that Requena was a party to the prior adjudication. Compare Moss , 559 F.3d at 1161 ("Collateral estoppel will bar a claim if four elements are met: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."), with Lenox MacLaren Surgical Corp. v. Medtronic, Inc. , 847 F.3d 1221, 1239 (10th Cir. 2017) ("To apply claim preclusion, three elements must exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." (brackets and quotations omitted) ).

Yet, the materials attached to the complaint reveal only one incident in which Requena requested assistance from Lamb. Lamb responded.

Requena does not explain what "nutraloaf" is but it appears to be prepared by blending a variety of normal prison foods together. See LeMaire v. Maass , 12 F.3d 1444, 1455 (9th Cir. 1993). While it may not be appetizing, there is no indication it is not nutritionally balanced or that Requena became sick from eating it.

There is no indication this harassment was anything other than verbal and the context of this allegation reveals it to be so. Indeed, given Requena's penchant for complaining, if the harassment was physical, he would have said so.

The Committee granted him relief as to a wristwatch. The relief was partial, however, because Requena sought $17.21, the price he paid for it in 2004. The Committee awarded him $8.61 to account for depreciation.

Requena does not explain "Native American callout" but he refers to it in two contexts. It appears that certain (or all) Native Americans are "called out" for recognition as exemplifying Native American values; Requena refers to members of the "callout." His use of the term also suggests that it is an area in the prison where Native American inmates gather and/or store their ethnic and religious items or artifacts. Requena was charged with removing items from the "callout."

The materials attached to the complaint reveal he was placed in segregation because after being attacked on June 30, he began fighting with the inmate who attacked him and was combative while officers attempted to restrain him.

The case against Crotts is, at best, a close one. First, the allegations are based on hearsay statements from an unknown officer. Second, there is no indication that Crotts was aware of Requena's concerns of retaliation or that he would be injured.

Even were we to consider the claims raised in the complaint and not specifically challenged on appeal, Requena has failed to and cannot allege an Eighth Amendment claim against Lundry, Wilson, and Barnt. His allegations against Lundry show, at most, a misdiagnosis; such negligence is insufficient. Nor did he allege he sought medical assistance from her and she refused it; the materials attached to the complaint do not show otherwise. See Estelle , 429 U.S. at 106, 97 S.Ct. 285 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). As for Wilson and Barnt, he did not allege any facts to suggest his mental health needs-anxiety and anger-are sufficiently serious. And the materials attached to the complaint do not show he was diagnosed with these conditions by a physician as needing treatment or that these conditions were so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Cf. Riddle v. Mondragon , 83 F.3d 1197, 1204 (10th Cir. 1996) ("Vague allegations of eroded self-esteem, apathy, fear and feelings of differentness, keeping a plaintiff in the 'addictive cycle,' do not amount to the basis for a constitutional claim.").

In the caption to this argument, he claims he was subjected to false disciplinary convictions in retaliation for filing grievances and writs of habeas corpus. In the body of the argument, he refers to McGehee's filing of a report in alleged retaliation for his filing a grievance against Lamb. We have already addressed and resolved that claim. He also refers to the overturned disciplinary report filed by Wagner, claiming it was filed because Wagner was "mad that he had to pack out [Requena]'s property when he was brutally beaten by other inmates." (Appellant's Br. at 21.) To the extent he is raising a retaliation claim against Wagner, he fails to state a claim because he has not alleged Wagner's filing of the disciplinary report was in retaliation for Requena's exercise of a constitutionally protected activity, but rather because Wagner was upset he had to pack out Requena's cell (which is not protected activity). See Shero , 510 F.3d at 1203.

See Heck , 512 U.S. at 486-87, 114 S.Ct. 2364 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." (footnote omitted) ); see also Edwards v. Balisok , 520 U.S. 641, 646, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (applying Heck to prisoner's § 1983 suit that, if successful, would imply the invalidity of the deprivation of good-time credits).