**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**June 16, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TIMOTHY ALAN WILSON,

    Plaintiff - Appellant,

v.

OFFICER ROBERT McKINNEY,

    Defendant - Appellee.

No. 21-5080
(D.C. No. 4:20-CV-00184-CVE-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Timothy Alan Wilson appeals pro se from the district court's judgment in

favor of Robert McKinney on Mr. Wilson's civil rights claims under 42 U.S.C.

§ 1983.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I.     Background**

The district court liberally construed Mr. Wilson's pro se complaint as

asserting three constitutional claims against Officer McKinney arising from

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Wilson's arrest in the early morning hours of April 6, 2020. Mr. Wilson claimed that Officer McKinney violated his Fourth Amendment rights by arresting him without probable cause and using excessive force in making the arrest, and also violated his right to equal protection under the Fourteenth Amendment by acting vindictively and racially profiling Mr. Wilson when responding to a 911 emergency call.

### A.    Mr. Wilson's Version of the Facts

Mr. Wilson alleged in his complaint that he fled from a disturbance at his residence and proceeded across the street to ask his neighbors to call the police. He claimed that when the police arrived, Officer McKinney drew his gun on Mr. Wilson, ordered him to the ground, and ultimately arrested him because he was "an African American male in this particular neighborhood" where other police officers live. R., Vol. 1 at 20. Mr. Wilson stated his belief that Officer McKinney "felt" that Mr. Wilson "did not deserve to be" in that neighborhood. *Id.* He further alleged that Officer McKinney used excessive force when he "slammed [him] to the ground twisting [his] arms to the back causing [his] arm to be broken near [his] wrist." *Id.*; *see also id.* at 17 (alleging that Officer McKinney "deliberately [and] intentionally broke [his] right wrist"). Officer McKinney also allegedly arrested Mr. Wilson "for a crime he did not commit," when he was "innocent" and "the victim." *Id.* at 20-21. According to Mr. Wilson's complaint, Officer McKinney never asked about the disturbance at Mr. Wilson's residence and was deliberately indifferent to his right to summon the police because Mr. Wilson is black. Mr. Wilson sought compensatory

2

damages for his wrist injury and punitive damages "to deter future behavior." *Id.* at 18.

### B.    Officer McKinney's Version of the Facts

Officer McKinney moved for summary judgment, asserting qualified immunity. The district court concluded that Officer McKinney's exhibits, including body camera video footage from Officer McKinney and Officer Buresh, a second arresting officer, *see id.* at 142 n.2, "show[ed] a markedly different version of events," *id.* at 144. According to Officer McKinney's evidence, the following occurred beginning at approximately 12:40 a.m. on April 6:

> [Officer] McKinney and Officer Corey Buresh, each of whom were driving separate patrol cars, responded to a 911 call reporting a burglary in process, specifically, that a male suspect, later identified as [Mr.] Wilson, was attempting to break into and enter the house at 5514 South Toledo Place, in Tulsa, Oklahoma. As [Officer] McKinney and [Officer] Buresh drove to that location, both officers heard updates from the 911 dispatcher advising the officers that the caller's "grandpa is trying to keep the door shut; caller doesn't know the suspect," and, finally, "suspect has kicked in the door." When [Officer] McKinney and [Officer] Buresh drove up to the house, both officers saw [Mr.] Wilson inside the house near the front doorway.
>
> Officer Buresh immediately got out of his car with his gun drawn and ordered [Mr.] Wilson to get on the ground. [Mr.] Wilson complied by running out of the house, descending the front steps, and laying face-down on the ground. After [Mr.] Wilson was already on the ground, face-down with his arms outstretched on either side of his body, Officer McKinney ran to [Mr.] Wilson's location, brought [Mr.] Wilson's arms together behind [Mr.] Wilson's back, and placed handcuffs on [Mr.] Wilson's wrists. When [Officer] Buresh rolled [Mr.] Wilson over, [Officer] Buresh saw that [Mr.] Wilson had an injury on his leg and asked him if he had been shot or stabbed and where he had come from; [Officer] McKinney requested an ambulance. [Mr.] Wilson appeared confused and some of his replies were inaudible, but he was able to provide the officers with his name.
>
> [Officer] McKinney later walked to the front door of the house to speak with the occupants of the house [Mr.] Wilson broke into. As he

entered the house, [Officer] McKinney saw that the door frame was broken and saw pieces of the frame lying on the ground. [Officer] McKinney then spoke with the family who lived there. The homeowner, William Rains, told [Officer] McKinney that he heard someone knocking on the front door about 12:30 a.m., that he looked through the peephole and saw a male he did not recognize, and that he briefly opened the door then immediately shut it. The male continued banging on the Rains's door and eventually "busted through the door," so [Mr.] Rains began hitting the male with a baseball bat just as [Officer] McKinney and [Officer] Buresh arrived.

Based on his own observations and the statements he obtained from the Rains family, [Officer] McKinney arrested [Mr.] Wilson on suspicion of first-degree burglary. [Officer] McKinney followed the ambulance that transported [Mr.] Wilson to St. John Medical Center for treatment of the leg injury and possible injuries from being hit with the baseball bat by [Mr.] Rains. After [Mr.] Wilson was discharged from the hospital, [Officer] McKinney transported [Mr.] Wilson to the David L. Moss Criminal Justice Center.

*Id.* at 144-46 (citations and footnote omitted).

Mr. Wilson pleaded guilty to one count of breaking and entering without unlawful intent. He was sentenced to one-year in jail with the last six months suspended.

### C.    District Court's Summary Judgment Analysis

The district court held that Officer McKinney was entitled to qualified immunity on Mr. Wilson's claims because Mr. Wilson failed to point to evidence demonstrating that Officer McKinney had violated his constitutional rights. The court treated Mr. Wilson's verified complaint as an affidavit for purposes of its summary judgment analysis. But it concluded it could accept as true only the following facts according to Mr. Wilson's version of the events: that he had recently moved to a house across the street from the Rainses' house, and that some disturbance had occurred at Mr. Wilson's home, causing him to flee across the street

4

to have the neighbors call the police. Aside from these facts, however, the district court concluded that "nearly every aspect of [Mr.] Wilson's version of events is either blatantly contradicted or utterly discredited by other evidence in the record." *Id.* at 149 (internal quotation marks omitted).

The district court first addressed Mr. Wilson's claim that Officer McKinney had arrested him without probable cause, noting that standard "'requires only a probability or substantial chance of . . . criminal activity, not an actual showing of such activity.'" *Id.* at 148 (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). The court held it was undisputed, based upon the arresting officers' affidavits and the video footage of the incident, that the Rainses had called the police to report that an unknown man, later identified as Mr. Wilson, was knocking on their door and had ultimately broken through the door, causing Mr. Rains to defend himself with a baseball bat. When the officers arrived, they saw Mr. Wilson in the doorway to the Rainses' house. Officer McKinney also observed the broken door frame and interviewed the Rains family about the incident. The district court concluded that "[a]ny objectively reasonable officer with knowledge of the facts [Officer] McKinney confronted would have determined that there was more than a substantial chance of [Mr.] Wilson's involvement in criminal activity." *Id.* at 150 (internal quotation marks omitted). Mr. Wilson therefore failed to demonstrate that Officer McKinney violated the Fourth Amendment by arresting him without probable cause.

Turning to Mr. Wilson's excessive force claim, the district court noted he was required to demonstrate that the force used "was 'objectively unreasonable' in light of the severity of the crime at issue, the degree of threat [Mr.] Wilson posed to the safety of the arresting officers or other[s], and [Mr.] Wilson's resistance to, or attempt to evade, arrest." *Id.* at 148-49 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  The court concluded that the video footage from Officer Buresh's body camera showed that Officer Buresh, not Officer McKinney, had approached Mr. Wilson with his gun drawn and ordered Mr. Wilson to get on the ground.  Rather than showing that Officer McKinney slammed Mr. Wilson to the ground, the footage from both officers' body cameras showed that Mr. Wilson complied by laying down on the ground.  And while it was undisputed that Officer McKinney used some physical force to place handcuffs on Mr. Wilson's wrists, the footage from both officers' body cameras blatantly contradicted Mr. Wilson's assertions that Officer McKinney unnecessarily twisted his arms or deliberately broke his wrist.  The district court concluded that, based on the facts sufficiently grounded in the record, Mr. Wilson failed to establish that Officer McKinney violated the Fourth Amendment by using excessive force in arresting him.

Finally, the district court held that Mr. Wilson failed to demonstrate a violation of his Fourteenth Amendment right to equal protection of the law, which required him to show that Officer McKinney treated him differently from similarly situated individuals and that Officer McKinney was motivated to do so by racial animus.  *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018).  Mr. Wilson

6

alleged in his complaint that Officer McKinney (1) arrested him or (2) failed to investigate the disturbance at his residence because Mr. Wilson is African American. The court concluded that Mr. Wilson's assertions regarding the purpose behind Officer McKinney's action or inaction were blatantly contradicted by the record, such that no reasonable jury could believe them. As to Mr. Wilson's arrest, the district court concluded that "no rational juror could believe [Mr.] Wilson's assertion that [Officer] McKinney treated him differently than any other individual seen breaking into an occupied home by two officers and by four occupants of the home or that race was a motivating factor in [Officer] McKinney's decision to arrest [Mr.] Wilson." R., Vol. 1 at 152. Moreover, according to the video footage, the officers repeatedly asked Mr. Wilson about his leg injury, where he had come from, and whether he had been shot or stabbed, yet Mr. Wilson provided only his name in response. The court concluded that "[n]o rational juror could believe that [Mr.] Wilson's race was a motivating factor in [Officer] McKinney's alleged decision not to investigate whether [Mr.] Wilson was the victim of a crime that may have occurred at his own home before [Mr.] Wilson broke into the Rains's home." *Id.* Mr. Wilson therefore failed to demonstrate a race-based equal protection violation by Officer McKinney.

Because Mr. Wilson did not satisfy his burden to demonstrate any constitutional violation, the district court held that Officer McKinney was entitled to qualified immunity and entered summary judgment in his favor.

## II.    Discussion

We review de novo a district court's grant of summary judgment based on qualified immunity. *Soza v. Demsich*, 13 F.4th 1094, 1099 (10th Cir. 2021). "In doing so, we view the evidence in the light most favorable to the nonmoving party, Mr. [Wilson]." *Id.* But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (noting a "videotape quite clearly contradict[ed] the version of the story told by [the plaintiff]," *id.* at 378).

Because Officer McKinney asserted in his summary judgment motion that he was entitled to qualified immunity, Mr. Wilson bore the "burden to prove (1) the defendant violated his constitutional rights; and (2) the law was clearly established at the time of the alleged violation." *Soza*, 13 F.4th at 1099. The district court exercised its discretion to address only the first prong of the qualified immunity standard, *see id.*, in holding that Mr. Wilson failed to meet his burden to demonstrate that Officer McKinney violated his constitutional rights. In doing so, the court concluded that most of Mr. Wilson's version of the events was blatantly contradicted by the record, in particular the video recordings from the two officers' body cameras. On appeal, Mr. Wilson does not address or show any error in the district court's reasoning. He simply reasserts his version of the facts, which the district court held

was not supported by evidence in the record.[1]  We agree with the district court's analysis and therefore affirm its grant of summary judgment in favor of Officer McKinney.

### III.  Conclusion

The district court's judgment is affirmed.  We grant Mr. Wilson's motion for an extension of time to file a reply brief and have considered that brief in our analysis.[2]

Entered for the Court


Per Curiam

---

[1] Mr. Wilson also asserts that, due to his incarceration, he was unable to obtain medical evidence of his wrist injury or an affidavit from the owner of the house he had fled from.  But as the district court advised, "contrary to [Mr.] Wilson's apparent position, it is not the Court's duty to obtain . . . evidence for him."  R., Vol. 1 at 151 n.12.  Moreover, Mr. Wilson fails to explain how this evidence would have precluded the entry of summary judgment in favor of Officer McKinney.

[2] On March 1, 2022, Mr. Wilson submitted a motion seeking an extension of time to file his opening brief.  But he had previously filed his opening brief on December 10, 2021, after which Officer McKinney filed his appeal brief on January 11, 2022.  We therefore construe Mr. Wilson's March 1 motion as seeking an extension of time to file a reply brief.