**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MARQUISE HARRIS, individually;
ARTESIA CABRAL, individually, and as
next friend of N.C., a minor child,

    Plaintiffs - Appellants,

v.

CITY AND COUNTY OF DENVER,
a municipality; CITY OF AURORA,
a municipality; SERGEANT KEVIN
BARNES, in his individual and official
capacity; DETECTIVE DAVID GROSS,
in his individual and official capacity;
OFFICER MIKE DIECK, in his individual
and official capacity; OFFICER TASHA
EWERT, in her individual and official
capacity; OFFICER JEREMY JENKINS,
in his individual and official capacity;
OFFICER PAUL JEROTHE, in his
individual and official capacity; OFFICER
JON MAREK, in his individual and official
capacity; OFFICER JEREMIAH MILES,
in his individual and official capacity;
DETECTIVE LARRY BLACK, in his
individual and official capacity;
DETECTIVE TONI TRUJILLO, in her
individual and official capacity,

    Defendants - Appellees.

No. 22-1007
(D.C. No. 1:19-CV-00572-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT***

_____

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding

_____

Before **McHUGH**, **MORITZ**, and **CARSON**, Circuit Judges.

_____

The plaintiffs in this 42 U.S.C. § 1983 lawsuit are Marquise Harris, Artesia Cabral, and their son N.C. (who was roughly one-and-a-half years old when the events underlying this case occurred).[1]  After Mr. Harris had been arrested near his home, Aurora Police Department officers entered the home without a warrant, removed N.C., and conducted a protective sweep to ensure no one else was inside. Plaintiffs sued the Aurora officers, alleging they unlawfully entered and searched their home and unlawfully seized N.C.[2]  The district court dismissed the unlawful-seizure claim, and it granted the officers summary judgment on the unlawful-search claim.  Plaintiffs appeal those rulings, and we affirm.

_____

precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Counsel for the Aurora officers filed a suggestion of death informing us that Mr. Harris has died.  No one has moved to substitute Mr. Harris's personal representative as a party, and we take no action based on the suggestion of death. *See* Fed. R. App. P. 43(a)(1).

[2] Plaintiffs also sued the City of Aurora, the City and County of Denver, Denver officers, and Aurora officers who did not participate in the protective sweep. This appeal involves only the claims against the Aurora officers who entered the home.

## I. Background[3]

Mr. Harris was involved in a shooting in Denver early one morning in 2017. By the afternoon, police had a warrant to arrest him for murder.[4] Mr. Harris lived in Aurora, Colorado, and Denver police asked Aurora police to help with his arrest. Aurora deployed two teams of officers—one to arrest Mr. Harris, the other to "set up on the perimeter to assist with containment." R. at 388. This appeal involves officers on the perimeter team who did not participate in the arrest, an event that occurred without a problem when Mr. Harris left his home to visit a neighbor.

Officers believed a small child (who turned out to be N.C.) remained in the home, but they did not know if an adult was with him. Denver officers told Aurora officers "that a search warrant was imminent or pending," and a Denver officer asked Aurora officers to perform a protective sweep "to secure the residence for a search warrant." R. at 390. "Generally, a protective sweep entails entering a residence and looking for possible hidden threats that would pose a danger to officer safety— looking for places where a person could hide." R. at 392.

As the Aurora officers prepared to enter the home, they became confused about whether Denver officers were seeking a warrant to search the home after all. Shortly before they entered the home, one of the officers said that Denver did not

---

[3] The parties agreed about much of the anticipated trial testimony. This section contains undisputed facts and information we gather from the parties' agreement.

[4] According to Plaintiffs' complaint, the Denver District Attorney's Office declined to file charges against Mr. Harris after concluding he acted in self-defense.

"want the house."[5]  R. at 391.  Moments later, however, another officer said that "one of the Denver guys" had just said "they want it."  R. at 392.

The Aurora officers entered the home.  After finding N.C. asleep in a living area, Officer Paul Jerothe removed him from the home and gave him to Ms. Cabral, who had recently arrived.  Officer Jerothe was in the home for roughly one minute.  The other officers who participated in the sweep were in the home for roughly two minutes.  They did not seize evidence; "they only looked in places where a person could hide."  R. at 395.  The Aurora officers then left the scene, and "Denver officers held the apartment, keeping it secure."  *Id.*  Mr. Harris later allowed Denver officers to retrieve the clothes he wore during the shooting, and no search warrant ever issued for the home.

Plaintiffs sued under § 1983.  This appeal involves only two of their claims.  First, they alleged Officer Jerothe violated the Fourth Amendment by seizing N.C.  The district court dismissed this claim under Federal Rule of Civil Procedure 12(b)(6).  Second, they alleged the Aurora officers who conducted the protective sweep violated the Fourth Amendment by entering and searching their home.  The district court declined to dismiss this claim under Rule 12(b)(6), but it later granted the officers summary judgment on the claim.  In dismissing the unlawful-seizure

---

[5] Among the Aurora officers, the term "want" means either "a warrant had been issued or a warrant was being written."  R. at 391.

claim and granting summary judgment on the unlawful-search claim, the district court concluded the officers were entitled to qualified immunity.

## II. Discussion

### A. Qualified immunity

When a defendant asserts qualified immunity, in either a motion to dismiss or a motion for summary judgment, the plaintiff assumes the burden to show (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *See Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) (motion to dismiss); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (summary-judgment motion). Courts have discretion to decide which qualified-immunity prong to consider first. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). In this case, the district court's rulings ultimately rest on the clearly-established prong, and we address only that prong.

An officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir.) (brackets and internal quotation marks omitted), *cert. denied*, 142 S. Ct. 427 (2021). To show that law is clearly established in our circuit, ordinarily the plaintiff must identify "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotation marks omitted). The precedent must establish the right in "the specific context of the

case, not as a broad general proposition." *Id.* (internal quotation marks omitted). Although we do not require a case directly on point, precedent "must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks omitted).

## B.  The Fourth Amendment

The Fourth Amendment prohibits unreasonable searches and seizures. *Cnty. of L.A. v. Mendez*, 137 S. Ct. 1539, 1546 (2017).  Warrantless searches and seizures inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980).  Yet not all warrantless searches of a home are unreasonable. *See United States v. Najar*, 451 F.3d 710, 713–14 (10th Cir. 2006).  The exigent-circumstances exception to the warrant requirement "permits, for instance, the warrantless entry of private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect, and when police fear the imminent destruction of evidence." *Birchfield v. North Dakota*, 579 U.S. 438, 456 (2016).

## C.  The claim alleging unlawful seizure of N.C.

Before reaching the merits, we reject Officer Jerothe's argument that we lack jurisdiction to review the order dismissing the claim alleging that he unlawfully seized N.C.  The district court dismissed the claim under Rule 12(b)(6) nearly two years before it issued its summary-judgment order.  Plaintiffs did not immediately appeal the dismissal.  Officer Jerothe argues that they do not properly appeal it now because their notice of appeal designates only the summary-judgment order.  But the summary-judgment order adjudicated "all remaining claims and the rights and

liabilities of all remaining parties." Fed. R. App. P. 3(c)(5)(A).  For that reason,

Plaintiffs' notice of appeal "encompasses the final judgment," *id.*, and all orders that

merge into the final judgment, including the order dismissing the unlawful-seizure

claim against Officer Jerothe, *see* Fed. R. App. P. 3(c)(4).

On the merits, the district court held that even if Officer Jerothe's conduct

amounted to a seizure, Plaintiffs "failed to point to law clearly establishing that a law

enforcement officer who carries an infant from inside a residence to the outside

where the infant's mother was present violates the Fourth Amendment."  Suppl. R.

at 26.

We review de novo a dismissal based on qualified immunity.  *See Thompson v.

Ragland*, 23 F.4th 1252, 1255 (10th Cir. 2022).  In doing so, we consider the conduct

as alleged in the complaint.  *Id.* at 1256.  For purposes of the unlawful-seizure claim,

the allegations in the complaint do not differ in any meaningful way from the

summary-judgment evidence we set out in the background section.

The district court correctly concluded that Plaintiffs failed to show that Officer

Jerothe violated a clearly established right.  Arguing otherwise, Plaintiffs appear to

rely on *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230 (10th Cir. 2003), and *Malik v.

Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306 (10th Cir. 1999).[6]  But those

cases differ from this one too much factually to clearly address Officer Jerothe's

---

[6] Although they had counsel in the district court, Plaintiffs represent
themselves on appeal, so we construe their brief liberally.  *See Hall v. Bellmon*,
935 F.2d 1106, 1110 (10th Cir. 1991).

conduct. *Roska* involved allegations that social workers removed a 12-year-old boy from his home without a warrant and placed him in a foster home because they believed his mother suffered from Munchausen Syndrome by Proxy. 328 F.3d at 1237–39. And *Malik* involved allegations that officials obtained an order to remove a child from her home "in retaliation for a parent's retaining counsel and through reckless omission of probative facts to a magistrate." 191 F.3d at 1316. In short, *Roska* and *Malik* did not clearly establish that Officer Jerothe violated the Fourth Amendment by removing N.C. from the home.[7]

## D. The claim alleging unlawful entry and search

We turn now to the district court's summary-judgment order, a ruling we review de novo viewing the facts in the light most favorable to Plaintiffs. *See Thomson*, 584 F.3d at 1311–12. The district court concluded that the evidence "leaves open the question of whether [the Aurora officers] justifiably acted on the basis of any of the claimed exceptions" to the warrant requirement. R. at 504. Even so, the court concluded, Plaintiffs did not show that the officers violated a clearly established right. We agree.

Plaintiffs again appear to rely on *Roska* and *Malik*. But those cases simply do not speak to the circumstances of this case. The Aurora officers confronted two

---

[7] In addition to suing Officer Jerothe for seizing N.C., Plaintiffs sued other officers under the theory that they failed to intervene against the seizure. Their appellate brief, however, contains no argument supporting the failure-to-intervene theory. For that reason, they have waived any such argument. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998).

problems: the need to secure the home until a search warrant issued and the possibility that a baby was alone inside. Although Plaintiffs insist the officers should have allowed Ms. Cabral herself to retrieve her baby, that option may have compromised the goal of securing the home. Yet allowing no one to enter may have compromised the baby's safety. As the district court put it, the Aurora officers "did not face a straight-forward situation of temporarily securing a property. They could not simply contain the residence and prevent anyone from entering it because a toddler was there, presumably alone." R. at 514. Given those circumstances, neither *Roska* nor *Malik* clearly established that the Aurora officers violated the Fourth Amendment by entering the home, removing N.C., and ensuring no one else was inside.[8]

Plaintiffs argue that the district court ignored evidence that a Denver sergeant told the Aurora officers not to enter the home. But they fail to cite any evidence supporting that claim, *see* Fed. R. App. P. 28(a)(8)(A), and our review of the record revealed none.[9]

---

[8] Plaintiffs fault the district court for focusing on "the final warrantless entry" into their home and ignoring the "initial warrantless entry," an entry they say occurred when officers "breached" the screen doors "and placed their feet inside in preparation to make their second and final warrantless" entry. Aplt. Br. at 19–20. But Plaintiffs did not raise separate claims based on what they now describe as separate entries, so the district court had no reason to dissect the officers' conduct into separate events. Besides, the conduct Plaintiffs refer to as the "initial warrantless entry" does not change our analysis.

[9] We recognize that Plaintiffs alleged in their complaint that a Denver sergeant told the Aurora officers not to enter the home "until a search warrant could be obtained," R. at 149, but at the summary-judgment stage, Plaintiffs needed to support

Plaintiffs also contend a jury could conclude that Aurora Sergeant Kevin Barnes, who led the team that entered the home, knew Denver officers did not have a search warrant and "fabricated the exigent circumstance." Aplt. Br. at 62. No one disputes that Denver officers did not have a search warrant; what matters is that Aurora officers were told that Denver officers were seeking one. On that point, we understand Plaintiffs to argue that Sergeant Barnes fabricated the idea that Aurora officers had been told Denver officers were seeking a search warrant for the home.[10] But moments before the officers entered the home, Sergeant Barnes's body-worn camera captured one officer tell the others that "one of the Denver guys" had just said they "want" the house. R. at 392. That video footage contradicts Plaintiffs' argument. And we will not accept a version of facts blatantly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

## E.  New claims

Plaintiffs argue that the officers unlawfully seized Ms. Cabral, unlawfully searched and seized her vehicle, and unlawfully seized Mr. Harris. But they did not raise these claims in their complaint, so we will not consider them. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018).

---

their allegations with evidence, *see Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997).

[10] If Plaintiffs mean to argue that Sergeant Barnes fabricated some other "exigent circumstance," Aplt. Br. at 62, they do not identify that circumstance, let alone cite evidence supporting their accusation.

### III. Conclusion

We affirm the district court's judgment.  We grant Plaintiffs' motions to proceed without prepaying costs or fees.

Entered for the Court


Joel M. Carson III
Circuit Judge