FILED
United States Court of Appeals
Tenth Circuit

**January 24, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LEW WHEELWRIGHT, individually and on behalf of all those similarly situated; KENT WRIGHT, individually and on behalf of all those similarly situated; DAVID STORY, individually and on behalf of all those similarly situated; UTAH AIRWAYS LLC, individually and on behalf of all those similarly situated; DAVID WESTWOOD, individually and on behalf of all those similarly situated; DURBANO PROPERTIES LC, a Utah limited liability company, individually and on behalf of all those similarly situated; THE WESTERN GROUP LC, individually and on behalf of all those similarly situated; DAVID L. DURBANO, individually and on behalf of all those similarly situated; JEFF STRAHAN, individually and on behalf of all those similarly situated; TROY LARKIN, individually and on behalf of all those similarly situated; STEPHEN SWENSON, individually and oh behalf of all those similarly situated,

     Plaintiffs - Appellants,

and

OGDEN REGIONAL AIRPORT ASSOCIATION, INC., a Utah non-profit corporation; WENDY MARSELL, individually and on behalf of all those similarly situated; WAYNE LAW, individually and on behalf of all those similarly situated; KELLY CROZIER, individually and on behalf of all those similarly situated; ANDREW HECHT,

No. 22-4083
(D.C. No. 1:21-CV-00075-DBB)
(D. Utah)

individually and on behalf of all those similarly situated; BARRY NEUMAYER, individually and on behalf of all those similarly situated; BRENT CARLSON, individually and on behalf of all those similarly situated; DAN BLUMEL, individually and on behalf of all those similarly situated; DAVE CARLSON, individually and on behalf of all those similarly situated; DKS PROPERTIES, LLC, a Utah limited liability company, individually and on behalf of all those similarly situated; ED RICH, individually and on behalf of all those similarly situated; FLYING R LLC, individually and on behalf of all those similarly situated; JUSTIN R. ECCLES, individually and on behalf of all those similarly situated; ROYAL S. ECCLES, individually and on behalf of all those similarly situated; LARRY E. JONES, individually and on behalf of all those similarly situated; RALPH CHADBURN, individually and on behalf of all those similarly situated; R. B. WILLEY, individually and on behalf of all those similarly situated; ROUND TRIP THAIRAPY, a Utah Limited Liability Company, individually and on behalf of all those similarly situated, LLC; MARK COWLEY, individually and on behalf of all those similarly situated; DAVID L. SHUMWAY, individually and on behalf of all those similarly situated; JAMES G. CUTRUBUS, individually and on behalf of all those similarly situated; RELIABLE EQUIPMENT & ENGINEERING LLC, individually and on behalf of all those similarly situated; BRUCE MASON, individually and on behalf of all those similarly situated; MANAGEMENT SCIENCES CORP., individually and on behalf of all those similarly situated; SHAMROCK 2 LLC, individually and on

2

behalf of all those similarly situated; COWRIDE LLC, individually and on behalf of all those similarly situated; SETH C. SCHALL, individually and on behalf of all those similarly situated; KATHERINE J. SCHALL, individually and on behalf of all those similarly situated; CHARLES JOHNSON, individually and on behalf of all those similarly situated; JOHN CARPER, individually and on behalf of all those similarly situated; TIMOTHY RENE FELKER, individually and on behalf of all those similarly situated; A&R INC, individually and on behalf of all those similarly situated; ROBERT L. JOHNSON, individually and on behalf of all those similarly situated; JOEL W. PIERCY, individually and on behalf of all those similarly situated; JIM PETERSON, individually and on behalf of all those similarly situated; SHERRIE PETERSON, individually and on behalf of all those similarly situated; TAMERA NEWMAN, individually and on behalf of all those similarly situated; SHEILA GARVEY, individually and on behalf of all those similarly situated; SCOTT MAJOR; MEIJE INVESTMENTS LLC, a Utah limited liability company individually and on behalf of all those similarly situated; OSCAR VAN THORNOCK, individually and on behalf of all those similarly situated; RICK ROHLER, individually and on behalf of all those similarly situated; VERN FARR, individually and on behalf of all those similarly situated; FARRV LLC, individually and on behalf of all those similarly situated; SCOTT JACKSON, individually and on behalf of all those similarly situated; STEPHEN FABISZAK, individually and on behalf of all those similarly situated; RSL HANGAR LLC, individually and on behalf of all

3

those similarly situated; JOHN SINGLETON, individually and on behalf of all those similarly situated; RALPH DOUGLAS, individually and on behalf of all those similarly situated; STRICTLY EXPERIMENTAL CREATIONS INC. , individually and on behalf of all those similarly situated; DAVID ERICKSON, individually and on behalf of all those similarly situated; HOMER CUTRUBUS, individually and on behalf of all those similarly situated; TROY CUTRUBUS, individually and on behalf of all those similarly situated; H & P INVESTMENTS, a Utah limited liability company individually and on behalf of all those similarly situated; ROB MARTIN, individually and on behalf of all those similarly situated; DAVID R. WALKER, individually and on behalf of all those similarly situated; DON PANTONE, individually and on behalf of all those similarly situated; MIKE MCKEE, individually and on behalf of all those similarly situated; LUCKY LAKE LLC, individually and on behalf of all those similarly situated; TIMOTHY J. POPP, individually and on behalf of all those similarly situated; BEN SHELDON, individually and on behalf of all those similarly situated,

     Plaintiffs,

v.

OGDEN CITY AIRPORT, a subdivision of Ogden City; OGDEN CITY, a municipality in the State of Utah; BRYANT GARRETT, in his capacity as manager of the Ogden City Airport,

     Defendants - Appellees.

4

_____

## ORDER AND JUDGMENT[*]
_____

Before **PHILLIPS**, **KELLY**, and **McHUGH**, Circuit Judges.
_____

This is an appeal by plaintiffs from the district court's dismissal of (1) their

federal claims in the second amended class action complaint (SAC) with prejudice

under Fed. R. Civ. P. 12(b)(6) and (2) their state claims without prejudice under

28 U.S.C. § 1367(c)(3).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

Plaintiffs allege the following in the SAC.  Plaintiffs are individuals or entities

that own or have owned aircraft hangars on ground leased from defendant Ogden

City Airport (Airport)—a public aviation facility owned and managed by defendant

Ogden City (City).  Defendant Bryant Garrett is the manager of the Airport.

Plaintiffs' ownership and use of the hangars are governed by ground lease

agreements, which contain the following provision—or something nearly identical—

requiring compliance with a particular City ordinance, namely Title 8-3-3:

> Lessee hereby acknowledges the applicability of Title 8, Ogden City
> Ordinances to this Lease Agreement.  Lessee hereby acknowledges notice
> of the terms, conditions and requirements presently contained therein and

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

5

agrees, so far as said ordinance applies to persons such as Lessee herein, to comply with such ordinance as now in effect or as it may be amended during the term of this Lease or any renewal. **Specifically, the terms and conditions of Title 8-3-3 (A through G) Leases and Agreements as currently existing or as may be amended are incorporated herein by reference and made part hereof as though written herein.**

Aplt. App., vol. I at 82.

Until April 2021, Title 8-3-3 allowed the Airport to grant ground leases for private hangars for a term of 15 years. As to lease renewal, Title 8-3-3 provided that when the lease expired, the ***"lessee shall have the 'first right of refusal' to renew the lease; provided however, that the lease is not in default. Each renewal term will be for five (5) years."*** *Id*. at 81.[1]

According to plaintiffs, "[t]he lease renewals have historically been automatic upon the [lessee's] request." *Id*. As a result, plaintiffs alleged that they "placed great stock in being able to reliably renew their leases . . . which has given [plaintiffs] confidence in pouring hundreds of thousands of dollars' worth of construction upgrade and upkeep into their respective hangars." *Id*. at 82.

In late 2018, the Airport proposed a new Business Plan (Plan) to stem the tide of its operating losses. The Plan recommended changes to existing ground leasing policies and further identified other areas where changes should be made to allow the Airport to come close to breaking even from an operations standpoint. *See* Aplt. App., vol. II at 291-303. Plaintiffs alleged that the Plan proposed that all future

---

[1] Most of the lease agreements also contain a "first right of refusal" provision in addition to the one contained in Title 8. *See* Aplt. App., vol. I at 82.

ground leases for construction of new hangars would last no longer than the time needed for the lessees to recoup their construction investment, after which the hangars would belong to the Airport and be leased out through facility leases at a higher rate. *See* Aplt. App., vol. I at 84-85. They further alleged that under the Plan, the ground leases for existing hangars would not be renewed once the hangars reached a certain age. *See id.* Although the Plan was not formally adopted at that time, plaintiffs alleged that the Airport's interactions with hangar owners "demonstrated that the [Plan] was in fact being utilized as a model for assisting the Airport turn a profit." *Id.*

In April 2021, Mr. Garrett formally submitted the proposed amendments to Title 8 to the Ogden City Council (City Council). Several groups opposed the amendments, including the Ogden Airport Advisory Board, the Ogden Regional Airport Association, and most of the hangar owners. Ultimately, however, the City Council adopted the amendments. Shortly thereafter, plaintiffs filed suit.

## II.  DISTRICT COURT PROCEEDINGS

Defendants moved to dismiss plaintiffs' first amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The district court denied the motion to dismiss for lack of jurisdiction but agreed that plaintiffs had failed to state plausible claims for relief. Plaintiffs sought and were granted permission to file their SAC in which they reasserted their previous claims of promissory estoppel, physical taking, regulatory taking, and entitlement to declaratory relief under 28 U.S.C. § 2201, and added new claims for First

7

Amendment retaliation, breach of contract, and breach of the covenant of good faith and fair dealing.  Plaintiffs also added Mr. Garrett as a defendant in their claim under 42 U.S.C. § 1983.  Defendants again moved to dismiss.

The district court granted the motion and dismissed plaintiffs' federal claims (physical taking, regulatory taking, First Amendment retaliation, and declaratory judgment) with prejudice under Rule 12(b)(6).  Then, having dismissed the federal claims, the court declined to exercise supplemental jurisdiction over plaintiffs' state law claims (promissory estoppel, breach of contract, and breach of the covenant of good faith and fair dealing) and dismissed those claims without prejudice under 28 U.S.C. § 1367(c)(3).  Plaintiffs appeal.

## III.  STANDARD OF REVIEW

"We review de novo a district court's grant of a 12(b)(6) motion to dismiss." *Johnson v. Reyna*, 57 F.4th 769, 774 (10th Cir. 2023).  "We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to . . . the non-moving party.  To survive a motion to dismiss, a complaint must include enough facts to state a claim to relief that is plausible on its face." *Id*. (citations and internal quotation marks omitted).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  But "the tenant that a court must accept" well-pled factual

allegations as true "is inapplicable to legal conclusions."  *Id*.[2]

## IV.  LEGAL FRAMEWORK

### A.  Takings Claims

#### 1.  *Physical Taking*

"The Fifth Amendment's Takings Clause provides that 'private property [shall

not] be taken for public use, without just compensation.'"  *N. Mill St., LLC v. City of*

*Aspen*, 6 F.4th 1216, 1224 (10th Cir. 2021) (quoting U.S. Const. amend. V).

> The text of the Fifth Amendment . . . provides a basis for drawing a
> distinction between physical takings and regulatory takings.  Its plain
> language requires the payment of compensation whenever the government
> acquires private property for a public purpose, whether the acquisition is
> the result of a condemnation proceeding or a physical appropriation.  But

---

[2] The district court dismissed plaintiffs' claims for declaratory relief under 28 U.S.C. § 2201 on the grounds that it did not have the authority to issue declaratory judgments absent "some independent basis of jurisdiction for doing so."  Aplt. App., vol. II at 347, 358 (internal quotation marks omitted).  *See also Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (recognizing that "the Declaratory Judgment Act does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction," namely "diversity jurisdiction" or "federal question jurisdiction") (internal quotation marks omitted)).  Having found no federal question jurisdiction, the court dismissed the claims for declaratory relief.  Because we affirm the dismissal of the federal claims, the claims for declaratory relief were also properly dismissed.

Relatedly, "[u]nder 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the . . . court has dismissed all claims over which it has original jurisdiction.  When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation marks omitted).  Again, because we affirm the court's dismissal of the federal claims, the court properly declined to exercise supplemental jurisdiction over the state claims.

9

the Constitution contains no comparable reference to regulations that prohibit a property owner from making certain uses of her private property.

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321-22 (2002). Although the property interest at the core of physical takings claims is typically real or personal property, the Fifth Amendment also extends to intangible rights, such as leaseholds and contracts. *See, e.g.*, *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945) (leaseholds); *Lynch v. United States*, 292 U.S. 571, 579 (1934) (contracts). But even if a private party's contract rights constitute a property right, "the exercise of contractual rights by a governmental contracting party generally does not give rise to a constitutional claim. *See Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (holding that "[t]aking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity. Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights") (citation omitted)).

### 2. *Regulatory Taking*

In addition to physical takings, "[t]he Supreme Court has recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such regulatory takings may be compensable under the Fifth Amendment." *N. Mill St*., 6 F.4th at 1224 (internal quotation marks omitted). But a per se regulatory taking occurs only under "the extraordinary circumstance when *no* productive or economically

beneficial use of land is permitted" resulting from the government regulation. *Tahoe-Sierra*, 535 U.S. at 330 (internal quotation marks omitted). "Anything less than a complete elimination of value, or a total loss," must be analyzed under the framework set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). *Id*. (internal quotation marks omitted). A plaintiff seeking to establish a regulatory taking has a "heavy burden." *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006).

## B. First Amendment Retaliation

To state a First Amendment retaliation claim, a plaintiff must plausibly allege

(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (internal quotation marks omitted).

## V. DISCUSSION

## A. Takings Claims

Plaintiffs maintain that they have stated a plausible claim for a physical taking because the City acted as "a sovereign" when it amended Title 8, and then, pursuant to its "sovereign" authority, the "City acquired property for the public good from the rightful owners." Aplt. Opening Br. at 11. *See also Pi Elecs. Corp. v. United States*, 55 Fed. Cl. 279, 286 (2003) (holding that "in order to show that it is entitled to a

takings remedy, plaintiff must have alleged that the Government was exercising its right as sovereign to acquire property from the rightful owner for the public good") (internal quotation marks omitted)).

According to plaintiffs, they are rightful owners of the Airport property because their leasehold interests "were valued as a fee simple assessment and . . . historically [some lessees had] pass[ed] the hangars from generation to generation or placed [them] in trusts for inheritance purposes." Aplt. Opening Br. at 11. They further maintain that the first right of refusal created a property interest that was taken when the City modified Title 8. *See id*. at 14.

Assuming, without deciding, that the City acted as "sovereign," the problem for plaintiffs is that they have failed to provide any authority that the "first right of refusal," fee-simple assessments, or terms of their estate-planning documents made them the rightful owners of the Airport property. As such, we decline to consider these arguments. *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) (declining to consider issue in part because appellant's position not even minimally supported by legal argument or authority); Fed. R. App. P. 28(a)(8)(A) (Among other things, "[t]he appellant's brief must contain . . . the argument, which [in turn] must contain[] appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies").[3]

_____

[3] Plaintiffs argue for the first time on appeal that the lease agreements are invalid or unenforceable as illusory. *See* Aplt. Opening Br. at 11-13. We decline to consider the issue because "[g]enerally, an appellate court will not consider an issue

Similarly, we affirm the district court's dismissal of plaintiffs' regulatory-taking claim because they fail to challenge the basis for the district court's ruling. *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015); *see also United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995) (explaining that "[i]t is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal") (internal quotation marks omitted)).

## B. First Amendment Retaliation

We agree with the district court that "[p]laintiffs' commencement of this lawsuit against the City and the Airport is a constitutionally protected activity under the petitioning clause of the First Amendment." Aplt. App., vol. II at 355. As such, we address the second and third elements required to state a plausible First Amendment retaliation claim.

The second element requires a plaintiff to plausibly plead that "the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Requena*, 893 F.3d at 1211 (internal quotation marks omitted). The district court explained that the action that plaintiffs "now allege was retaliatory and chilling—Defendants' refusal to renew their ground leases—is the same action that led Plaintiffs to bring this lawsuit in the first place." Aplt. App., vol. II at 356. This claim, according to the court, was

---

raised for the first time on appeal." *Tele-Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1232 (10th Cir. 1997).

beyond the parameters of a "[t]ypical" retaliation claim in which the alleged

retaliatory conduct "occur[s] *outside* the scope of the plaintiff's petition for redress."

*Id*. at n.96 (emphasis added), citing *Van Deelen v. Johnson*, 497 F.3d 1151, 1157

(10th Cir. 2007).  Noting plaintiffs' failure to "identify[] . . . a single case in which a

plaintiff brought a First Amendment retaliation claim in such circumstances, let alone

one in which such a claim was found plausible," the court determined that plaintiffs

failed to plausibly plead the second element.  Aplt. App., vol. II at 356.  Again,

plaintiffs' failure on appeal to provide any authority to support their argument means

that we will not consider the issue.  *See Phillips*, 956 F.2d at 953-54; Fed. R. App. P.

28(a)(8)(A).

But even if plaintiffs met the second element, they did not meet the third

element, which requires them to plausibly plead "that the defendant's adverse action

was substantially motivated as a response to the plaintiff's exercise of

constitutionally protected conduct."  *Requena*, 893 F.3d at 1211 (internal quotation

marks omitted).  We agree with the district court that defendants' failure to renew the

ground leases was not "*a response* to Plaintiffs' exercising their First Amendment

rights by bringing this lawsuit."  Aplt. App., Vol. II at 355.  To the contrary, it was

defendants' refusal to renew the leases that "led Plaintiffs to file this lawsuit in the

first place."  *Id*.  In addition, the court explained that

> [t]he fact that the Airport allegedly told certain plaintiffs *after* the
> commencement of this lawsuit that no one who is participating in it will
> receive a lease renewal does not change the fact that the decision to stop
> renewing ground leases in favor of other types of leases was made before
> this lawsuit began.  Thus, there are no grounds for the court to reasonably

infer that Defendants' refusal to renew any of Plaintiffs' ground leases, and any injury that may have cause, was substantially motivated by Plaintiffs' lawsuit.

*Id*. at 356.

Plaintiffs' contention that defendants' attempts to resolve individual claims as "an effort to retaliate against and/or bully Lessees who opted to engage in the lawsuit," is unavailing. Aplt. Opening Br. at 17. Instead, we agree with the district court that this was "essentially a settlement offer, not an act of deterrence or intimidation." Aplt. App., vol. II at 357.

## VI.  CONCLUSION

The judgment of the district court is affirmed. We deny appellees' request for an award of attorney fees, which is based on a provision in the lease agreements that entitles the prevailing party in litigation concerning a breach or default to an award of reasonable fees. Because the state-law contract claims were dismissed without prejudice, defendants are not the prevailing party on the breach-of-contract claims in this federal action.

Entered for the Court

Gregory A. Phillips
Circuit Judge